STUART M. EPPSTEINER (SBN 098973)
SME@EPPSTEINER.COM
ANDREW J. KUBIK (SBN 246902)
AJK@EPPSTEINER.COM
**EPPSTEINER & FIORICA ATTORNEYS, LLP**
12555 HIGH BLUFF DR., STE. 155
SAN DIEGO, CA 92130
TEL: 858.350.1500
FAX: 858.350.1501

ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNETTE CLARK, individually and on behalf of all those similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>BOSTIK, INC., a Delaware corporation; DAVID C. GREENBAUM CO., INC., a California corporation; LEONARD'S CARPET SERVICES, INC., a California Corporation, and DOES 1 through 100, inclusive.<br><br>Defendants, | Case No. '15CV2670 JM   JLB<br><br>**CLASS ACTION**<br><br>**COMPLAINT**<br><br>**[JURY TRIAL DEMANDED]**<br><br>1.   **BREACH OF EXPRESS WARRANTY;**<br>2.   **BREACH OF IMPLIED WARRANTY;**<br>3.   **"UNFAIR" BUSINESS PRACTICES IN VIOLATION OF BUSINESS AND PROFESSIONS CODE §17200, ET SEQ.;**<br>4.   **"FRAUDULENT" BUSINESS PRACTICES IN VIOLATION OF BUSINESS AND PROFESSIONS CODE §17200, ET SEQ.;**<br>5.   **"UNLAWFUL" BUSINESS** |

PRACTICES IN VIOLATION OF BUSINESS AND PROFESSIONS CODE §17200, ET SEQ.

6.    FALSE ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17500, ET SEQ.

7.    VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, ET SEQ.

Plaintiff Annette Clark ("Plaintiff"), by and through her undersigned counsel, individually and on behalf of all others similarly situated, alleges the following facts and claims upon personal knowledge and upon information and belief as to all other matters as follows:

## PRELIMINARY STATEMENT

1.     Plaintiff Annette Clark, on behalf of herself and all others similarly situated, brings this action to recover economic loss from the sale of a defective product, the cost to repair damage to their single-family homes in the form of cracked floor tiles, necessary relocation expense, restitution, costs of suit, and attorneys' fees caused by the defective DURABOND® D-70™ Premium Flexible Polymer Modified Thin-Set Proven Adhesion and Crack Suppression Mortar (hereinafter "D-70" or "Defective Product") manufactured by defendant Bostik, Inc. ("Bostik"), supplied  by defendant David C. Greenbaum Co., Inc. ("Greenbaum") and installed by Defendant Leonard's Carpet Services, Inc. ("Leonard's").

**VENUE**

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 a substantial amount of the events and omissions giving rise to this action took place within this district and Plaintiff Annette Clark's home is located within this district.

**PARTIES**

**Defendants**

3.      Defendant Bostik, Inc., a Delaware corporation, was and is doing business throughout the State of California and designed, manufactured, marketed and sold D-70 which was incorporated into the original construction of the single-family home owned by Plaintiff and Class members as described more fully herein.

4.      Bostik is a leading global adhesive specialist in industrial manufacturing, construction and consumer markets. For more than a century, Bostik has made innovative adhesives.  Bostik has annual sales in excess of $2.1 billion, employs over 4,800 people, and has a presence in more than 50 countries. As of February 2015, Bostik is a wholly-owned company of Arkema, a French chemical company. Bostik maintains a manufacturing facility in Temecula, California located at 27460 Bostik Court, Temecula, CA 92590.

5.      David C. Greenbaum Co., Inc., a California Corporation, was and is doing business throughout the State of California and acted as a material supplier of the D-70 which was incorporated into the original construction of the single-family homes owned by Plaintiffs and described more fully herein. Greenbaum was the exclusive supplier of the D-70 for the Southern California region.  Greenbaum maintains its principal place of business at 290 E. Verdugo Ave., Suite 101, Burbank, CA 91502.

6.      Plaintiff alleges based on information and belief that defendant Leonard's Carpet Services, Inc., a California Corporation, was and is doing business throughout the State of California and acted as the installer of the D-70 which was

incorporated into the original construction of the single-family homes owned by Plaintiff and described more fully herein.  Leonard's was the exclusive installer of the D-70 for the Southern California region.  Leonard's maintains its principal place of business at 1121 N. Red Gum St., Anaheim, CA 92806.

7.      Plaintiff is informed and believe and thereon alleges that Bostik and Does 1 through 25, inclusive, (hereinafter sometimes jointly referred to as "Product Manufacturers") designed, manufactured, marketed and sold the allegedly D-70 used in the original construction of the single-family homes owned by Plaintiff and Class members in California. Product Manufacturers were and are alter egos that there is such a unity of interest and ownership between each Product Manufacturer that their separate personalities no longer exist, and failure to disregard the corporate entity would sanction a fraud or promote injustice.

8.      Plaintiffs are informed and believe and thereon allege that Greenbaum and Does 26 through 50, inclusive, (hereinafter sometimes jointly referred to as "Product Suppliers") marketed, sold, supplied and or installed D-70 in the original construction of the single-family homes owned by Plaintiff and Class members and located in California.  Product Suppliers were and are alter egos that there is such a unity of interest and ownership between each Product Supplier that their separate personalities no longer exist, and failure to disregard the corporate entity would sanction a fraud or promote injustice

9.      Bostik, Greenbaum, and Leonard's; and Does 1 through 100 are collectively referred to herein as "Defendants."

10.     Defendants Does 1 through 100, inclusive, whether individual, corporate, associate, alter ego, or otherwise, are fictitious names of defendants whose true names and capacities, at this time, are unknown to plaintiffs.  Plaintiff alleges upon information and belief that at all times herein mentioned, each defendant sued herein as a Doe was acting for itself or its agent, servant, employee, and/or alter ego of its co-defendants, as residents or in performing work in the State

of California, and in doing the things hereinafter mentioned, was acting in the course and scope of its authority as such agent, servant, employee, and/or alter-ego, and with the full knowledge, permission and consent, either express or implied, of its co-defendants. Plaintiff alleges upon information and belief that each of the fictitiously named defendants, whether acting for itself or as agents, corporations, associations, or otherwise, is in some way liable or responsible to Plaintiff and Class members on the facts hereinafter alleged, and caused injuries and damages proximately thereby. At such times as Doe defendants' true names and capacities become known to Plaintiff, Plaintiff will seek leave of this Court to amend this Complaint to insert the true names and capacities of Doe defendants.

**Plaintiff**

11.  Plaintiff Annette Clark, individually and on behalf of all others similarly situated, is owner of 32140 Evening Primrose Trail, Campo CA 91906, a single-family home in which Defendants incorporated D-70 as part of original construction (the "Property"). Plaintiff Clark has numerous cracked floor tiles throughout her home.

12.  Plaintiff brings this Class Action on behalf of herself and the following Class:

> All owners of single-family homes located in California in which Leonard's Carpet Service, Inc. installed ceramic, porcelain or natural stone floor tiles on concrete substrates using D-70 as part of original construction (hereinafter "CLASS").

13.  Excluded from the Class are (i) Defendants, any entity in which a Defendant has a controlling interest, or which has a controlling interest in a Defendant, and Defendants' legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) Defendants' employees, officers, directors,

agents, and representatives and their family members; (iv) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family; and (v) any homeowner in the State of California who has had their floor replaced under Defendants' express warranties.

14.     For all purposes as set forth in the Complaint, "Plaintiffs" shall include by reference both the named plaintiff and each prospective member of the putative class. Plaintiff alleges upon information and belief, based upon the investigation made by Plaintiff and by and through their attorneys and agents, as follows:

## CONDUCT

15.     At issue in this litigation is Defendants' unfair, unlawful, and deceptive conduct through which Bostik took an existing product, renamed and repackaged it, and then, together with Greenbaum, marketed it as a completely different product with characteristics, qualities, benefits, and uses that is did not have. Namely, Bostik and Greenbaum promoted the Defective Product with the ability to act as a crack suppressant for tile floors installed on concrete substrates, when, in fact, Bostik knew that the Defective Product was merely regular mortar that was not fit for this purpose because it lacked crack suppression properties.[1]

16.     Together with its exclusive supplier for Southern California, Greenbaum, and its exclusive installer for Southern California, Leonard's, Bostik had the Defective Product installed in thousands of homes throughout California.

17.     Defendants' unscrupulous and fraudulent conduct has resulted in millions of dollars of damages to homeowners across the State of California in violation of California consumer protection laws and the common law, and in breach of express and implied warranties.

---

[1] Whenever tile is bonded to concrete, cracks occurring in the concrete can cause cracks in the tile layer.  This is often referred to as "reflective cracking."

18. Defendants perpetrated a fraud by omission by concealing the material fact that the Defective Product was merely a repackaged mortar that lacked any crack suppressing properties.

19. Plaintiffs suffered economic injury by being promised one thing, a crack suppressing mortar, and being sold something completely different, regular mortar unsuitable for adhering tile directly to concrete substrates. Plaintiffs' floors in their homes must now be ripped up and replaced using a proper crack suppressing flooring system.

20. Bostik originally developed and designed the Defective Product in or around 1995 as a polymer modified thin-set mortar with the sole intended purpose of being a flooring adhesive for ceramic, porcelain and natural stone tile applications on various flooring substrates including concrete foundations. At the time of its original development and design, the Defective Product was branded, marketed and sold as Bostik's "Reflex Polymer Modified Thin-Set Mortar." The Defective Product had to be used in combination with a crack-suppression membrane[2] when used on concrete substrates.

21. On or around March 19, 2001, Bostik acquired non-party DAP Inc., and its Durabond® brand family of flooring installation products, as well as three of DAP Inc.'s manufacturing and distribution facilities located throughout the United States. The Durabond® brand acquisition transformed Bostik's North American Flooring Group overnight into a full-service supplier of flooring installation and maintenance solutions for all flooring segments, including ceramic tile. The Durabond® branded products complemented Bostik's already expansive line of

---

[2] A crack-suppression membrane prevents movement in the concrete directly transferring to the tile. Although the membrane is bonded to the concrete and the tile to it, the membrane stretches where needed to prevent or reduce force transference. These membranes are either trowel applied or sheet applied. As such, using a membrane adds cost and time to a project compared to a one-step crack-suppressing adhesive.

ceramic tile, stone and hardwood installation and aftercare products, including the Defective Product. More importantly, the Durabond® branded products filled gaps in Bostik's existing flooring product portfolio.

22.    In or around May 2001, shortly after Bostik's acquisition of the Durabond® brand of products, Bostik re-branded the Defective Product from "Bostik's Reflex Polymer Modified Thin-Set Mortar" to "DURABOND® D-70™ Premium Flexible Polymer Modified Thin-Set." At the time Bostik rebranded the Defective Product, the product's sole intended use remained as a flooring adhesive for ceramic, porcelain and natural stone tile applications on flooring substrates including concrete foundations. Stated differently, the Defective Product was originally developed, designed and intended solely to adhere tiles to floors in combination with a separate crack-suppressing membrane.

23.    Beginning in or around August 2002, many years after the original development and design of the Defective Product, Bostik's competitors began offering a one-step crack-suppressing mortar.  A one-step crack-suppressing mortar has the advantage of drastically reducing material and labor costs and quickly became an attractive alternative to builders and installers.

24.    Afraid of losing customers, Bostik, together with its distributor and supplier Greenbaum, began marketing the Defective Product for a new untested and unproven alternative use; as a crack suppression thin-set mortar capable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile.

25.    Bostik and Greenbaum began marketing the Defective Product as a crack suppressing thin-set mortar despite the fact that the Defective Product was not developed, designed, tested, intended or approved to perform as a "proven" crack suppression thin-set mortar capable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile, as Bostik and

Greenbaum marketed it. (See Exhibit "A" attached hereto, a true and correct copy of the Defective Product sale sheet).

26.  Bostik first began marketing the Defective Product as a "proven" crack suppression thin-set mortar capable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile to fill a gap in Bostik's existing flooring product portfolio and specifically to compete in the marketplace with industry competitors such as MAPEI® and CUSTOM BUILDING PRODUCTS® and their tested and warranted crack suppression thin-set mortar products.

27.  At the time Bostik and Greenbaum first marketed the Defective Product as a "proven" crack suppression thin-set mortar capable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile, Bostik's own written product specifications failed to state any crack suppression performance capabilities or uses for the Defective Product. (See Exhibit "B" attached hereto, a true and correct copy of the May 2003 Defective Product Specification Sheet.)

28.  At the time Bostik and Greenbaum first marketed the Defective Product as a "proven" crack suppression thin-set mortar, Bostik had not altered, changed or modified the formula for the Defective Product in any way, but particularly in a manner that would ensure the Defective Product's performance as a "proven" crack suppression thin-set mortar capable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile.

29.  At the time Bostik and Greenbaum first marketed the Defective Product as a "proven" crack suppression thin-set mortar, Bostik had not conducted any laboratory or field testing on the Defective Product to support the marketing representations that the Defective Product in fact performed as a "proven" crack suppression thin-set mortar capable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile.

30. At the time Bostik and Greenbaum first marketed the Defective Product, Bostik issued a series of ten-year written warranties intended to protect contractors, consumers and homeowners, including the Class, guaranteeing the Defective Product's performance as a "proven" crack suppression thin-set mortar capable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile. (See Exhibit "C" attached hereto a true and correct copy of the Bostik Defective Product written warranty.)

31. Based on information and belief, in or around May 2003, Bostik and Greenbaum first sold the Defective Product as a "proven" crack suppression thin-set mortar capable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile. As part of Greenbaum's distribution agreement with Bostik for the Defective Product, Bostik gave Greenbaum monetary rebates for Greenbaum's sale of the Defective Product as a "proven" crack suppression thin-set mortar capable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile.

32. Based on information and belief, in or around May 2003, Bostik and Greenbaum sold the Defective Product as a "proven" crack suppression thin-set mortar capable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile to Leonard's. Leonard's subsequently used the Defective Product for the original flooring installation of ceramic, porcelain and natural stone tiled floors in homes owned by the Class throughout California.

33. In reliance on Bostik's and Greenbaum's omissions or material fact, and representations, as well as warranties issued by Bostik and Greenbaum, Leonard's expected the Defective Product to perform as a "proven" crack suppression thin-set mortar capable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile.

34. Based on information and belief, in reliance on the omissions, representations, assurances and warranties issued by Bostik and Greenbaum,

Leonard's expressly and impliedly warranted to the Class that the Defective Product would perform as a "proven" crack suppression thin-set mortar capable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile.

35.    In reliance on the express and implied warranties, and material omissions of Bostik, Greenbaum and Leonard's, the Class, as the ordinary consumer would, had a reasonable expectation that the Defective Product would perform as a "proven" crack suppression thin-set mortar capable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile.

36.    Notwithstanding the various written representations and warranty guarantees issued by Bostik, Greenbaum and Leonard's, the Defective Product predictably failed to perform as intended and expected. Specifically, the Defective Product failed to act as a "proven" crack suppression thin-set mortar by failing to suppress concrete foundation cracks less than and up to 1/8" from damaging ceramic, porcelain and natural stone floor tile.

37.    The Defective Product was never developed, modified, changed, altered, designed or intended to perform as a "proven" crack suppression thin-set mortar capable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile. Bostik never conducted laboratory or field tests to ensure the Defective Product's performance as a "proven" crack suppression thin-set mortar capable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile. Bostik never altered, changed or modified the formula for the Defective Product in any way but particularly in a manner that would ensure the Defective Product's performance as a "proven" crack suppression thin-set mortar capable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile. Notwithstanding, Bostik advertised, marketed and sold the Defective

Product as a "proven" crack suppression thin-set mortar capable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile between August 2003 and December 2007.

38.     The untested and unproved Defective Product failed to perform as Bostik, Greenbaum and Leonard's advertised, marketed, sold and/or warranted as a "proven" crack suppression thin-set mortar capable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile. Specifically, the Defective Product failed to suppress concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile in the homes owned by Plaintiffs and the Class.

39.     The inherent defective design, manufacture and supply of the Defective Product, and the Defective Product's inadequate warnings, and the damage caused thereby, was and is latent and was not apparent by reasonable inspection to Plaintiffs and or the Class.

40.     Between 2005 and 2009, Bostik issued nearly $1 million in payments and credits for verified warranty repair work to Leonard's and others related to the Defective Product's failed performance as a crack suppression thin-set mortar capable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile.

41.     In May 2009, Bostik removed the Defective Product from the marketplace. At no time before or after removing the Defective Product from the marketplace did Bostik warn its consumers, including the Class, that the Defective Product failed to perform as marketed, advertised, sold and guaranteed, i.e., as a "proven" crack suppression thin-set mortar capable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile.  Bostik's concealment of the material facts continues to this date.

42.     Despite the full knowledge that the Defective Product failed to perform as marketed, advertised, sold and guaranteed, i.e., as a "proven" crack suppression

thin-set mortar capable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile by May 2009, neither Bostik, Greenbaum, nor Leonard's ever issued a product recall. Rather, Bostik, Greenbaum and Leonard's purposefully, intentionally and willfully attempted to hide the Defective Product's failed performance as a "proven" crack suppression thin-set mortar incapable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile from the general public including the Class.

43.     Defendants Bostik, Greenbaum, and Leonard's intended or had reason to expect that the omitted material facts that Defective Product lacked crack suppression properties would influence the conduct of everyone in the chain of supply of the Defective Product, from Bostik all the way down to the homeowner.

44.     To the extent the allegations above are not sufficiently specific, Plaintiff now pleads Defendants' fraud with additional specificity:

45.     **WHO:** Defendants Bostik, Greenbaum, and Leonard's are the entities responsible for omitting and concealing material information from Plaintiffs.

46.     **WHAT:** Defendants Bostik, Greenbaum and Leonard's omitted the material fact that the Defective Product was merely a repackaged mortar that was incapable of suppressing foundation cracks.

47.     **WHEN:** Defendants Bostik and Greenbaum began omitting the material information in or around August 2002 when Bostik, together with its distributor and supplier Greenbaum, began marketing the Defective Product as a crack suppression thin-set mortar capable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile.   Leonard's began concealing the material fact that the Defective Product was defective shortly thereafter in late 2002 as it began experiencing a high rate of claims for foundation cracks in homes in which it had installed the Defective Product.   Defendant's concealment of material facts continued from 2002 through to the present.  Bostik

48.   **WHERE:** Defendants Bostik and Greenbaum omitted the material information on specification sheets, promotion materials, warranties, other written materials and on the packaging of the Defective Product itself.   Bostik and Greenbaum also omitted the material information orally during sales presentations to Leonard's.   In turn, Leonard's omitted the material information in communication with builders and developers and homeowners who made warranty claims. In turn, builders, developers, and sellers of homes containing D-70 omitted the material facts from Plaintiffs. As to Plaintiff, the material information was omitted from disclosures at the time she purchased her home.   Plaintiff is an indirect recipient of Defendants material omissions.

49.   **WHY and HOW:** The omission of the material information is deceptive because a reasonable consumer would want to know whether a defective product is going to be or has been installed in his or her home. Here, Plaintiffs would have behaved differently had Defendants disclosed the material information by not paying as much as they did for her home or not purchasing their homes.

## TOLLING OF STATUTES OF LIMITATIONS

50.   Any applicable statutes of limitation have been tolled by Defendants' continuing, knowing and active concealment of the fact that the Defective Product is merely a repackaged mortar that lacks any crack-suppressing properties.  Defendants have kept Plaintiff and Class members ignorant of vital information essential to the pursuit of their claims without any fault or lack of diligence on their part.

51.   Claims of Class members are also tolled pursuant to the continuing violations doctrine.

52.   Claims of Class members are tolled pursuant to the discovery rule. Given the undetectable nature of the Defective Product, at, before, and even after purchase of a home, and Defendants' concealment of the material fact, Plaintiffs

1    could not have reasonably discovered or have reason to discover their cause of
2    action until informed of Defendants' fraud.

3        53.    Plaintiffs' claims are tolled under the theory of continuous accrual.
4    Each attempt by Defendants to repair any cracked tile triggered a new limitations
5    period**.**

6        54.    In the alternative, Defendants should be estopped from relying on any
7    statutes of limitation.  Defendants have been under a continuing duty to disclose the
8    true character, quality, and nature of the Defective Product to Plaintiffs, but have
9    failed to do so.  Because Defendants are and were in exclusive possession of the
10   facts and information concerning the true character, quality and nature of the
11   Defective Product, Defendants are estopped from relying on any statutes of
12   limitations.

13                         **<u>CLASS ACTION ALLEGATIONS</u>**

14

15       55.    Plaintiff brings this Class Action on behalf of herself and the Class
16   defined as follows:

17              **All owners of single-family homes located in California in**
18              **which Leonard's Carpet Service, Inc. installed ceramic,**
19              **porcelain or natural stone floor tiles on concrete substrates**
20              **using the Defective Product as part of original construction.**

21       56.    Excluded from the Class are (i) Defendants, any entity in which a
22   Defendant has a controlling interest or which has a controlling interest in a
23   Defendant, and Defendants' legal representatives, predecessors, successors and
24   assigns; (ii) governmental entities; (iii) Defendants' employees, officers, directors,
25   agents, and representatives and their family members; (iv) the Judge and staff to
26   whom this case is assigned, and any member of the Judge's immediate family; and
27   (v) any homeowner in the State of California who has had their floor replaced under
28   Defendants' express warranties.

57.   Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal the Class should be expanded or otherwise modified.

58.   This action has been brought and may properly be maintained as a class action because there is a well-defined community of interest in the litigation in which common issues predominate and the proposed Class is easily ascertainable.

(a)   The Class is sufficiently numerous that joinder of all Class members individually would be impractical and burdensome.  The Class exceeds 1000 class members.

(b)   This action involves questions of law and fact common to the entire class in that all class members have suffered damages due to the Defective Product, i.e., diminished value to their homes, repair costs, and/or cracked ceramic, porcelain and natural stone floor tile as a direct and proximate result of the Defective Product's failure to perform as marketed, advertised, sold and guaranteed, i.e., as a "proven" crack suppression thin-set mortar capable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile.

(c)   Plaintiff Clark's claims are typical of the Class members' claims and the anticipated affirmative defenses of the Defendants are also typical to those that can be asserted against the class representatives and class members.  Plaintiffs' claims that the original design, manufacture, marketing, sale and installation of the Defective Product by Defendants are typical in that the homes all contain the same Defective Product. Also, the nature and scope of repair of damages are typical in that the entire flooring systems must be uniformly replaced regardless of the type of floor covering, i.e., ceramic, porcelain, and/or natural stone tile.  The causes of damages caused by the Defective Product are typical in that the damage claimed by Plaintiffs and the Class resulted from failure of the design, manufacture, supply, and/or inadequate disclosures of the Defective Product by Defendants.

(d)   There is a well-defined community of interest subject to clear

ascertainment, consisting of those specific owners of single-family homes located within California, originally constructed with the Defective Product that was designed, manufactured, marketed, promoted, sold, installed and/or supplied by Bostik, Greenbaum, and Leonard's, employing the same product specifications, and using the same materials and construction practices.

(e)    Common questions of law and fact predominate over any individual factual and legal issues, if any, regarding the claims of the class members. Furthermore, the interests of justice and efficiency will be best served by bringing this action as a class action with regard to the aforementioned interests. The single most important common questions that will drive the resolution of the litigation is whether the D-70 is defective. The answer to this question will help to resolve the following list on non-exclusive common issues:

ii.   Whether Defendants breached express and implied warranties;

ii.   Whether Defendants' conduct was likely to deceive a reasonable consumer;

iv.   Whether Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in connection with the sale and warranting of the Defective Product;

v.   Whether Defendants knew or recklessly disregarded the Defective Product lacked crack suppression characteristics;

vi.   Whether Defendants concealed and failed to disclose material facts;

vii.   Whether, as a result of Defendants' conduct, Plaintiffs have suffered damages, and if so, the appropriate amount thereof;

viii.   Whether, as a result of Defendants' conduct, Plaintiffs are entitled to equitable relief and the nature of such relief.

59.    The same Defendants are responsible for the claims which would be filed by each member of the Class in the absence of a class action. The nature of the

construction defect and damage associated with the Defective Product is the same for all Class members: use of substandard adhesive with a propensity to cause cracked ceramic, porcelain and natural stone floor tile.

60.    Plaintiffs will fairly and adequately represent the interests of the Class. Plaintiffs all own homes containing the Defective Product and are adequate representatives of the Class as they have no interests which are adverse to the interests of absent Class members.  Plaintiffs have retained counsel with substantial experience and success in the prosecution of complex defective product and consumer class action litigation.

61.    A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  The disposition of their claims in this case and as part of a single class action lawsuit, rather than hundreds of individual lawsuits, will benefit the parties and greatly  reduce the aggregate judicial resources that would be spent if this matter were handled as thousands of separate lawsuits. Furthermore, given the extraordinary expenses and burden in conducting the discovery and presentation of evidence about the inherent defects in the Dishwashers, the burden of individual litigation would make it extremely difficult, if not impossible for individual members of the Class to redress the wrongs asserted herein, while an important public interest will be served by addressing the matter as a class action. Moreover, separate prosecution by thousands of individual members of the Class would likely establish inconsistent standards of conduct for the Defendant and result in the impairment of and potential harm to Class members' rights and the disposition of their interests through actions to which they were not parties.  Plaintiff is informed and believes that a great amount of time and expense will be saved by conducting the discovery and presentation of evidence

about the inherent defects in the Dishwashers in a single class action lawsuit, in contrast to the repeated discovery and presentation of evidence in thousands of separate lawsuits brought on the common questions presented by the allegations of this complaint. Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

**FIRST CAUSE OF ACTION**

**Breach of Express Warranties under Common Law,**

**Cal. Civ. Code 1790 *et seq*., and Cal. Comm. Code § 2313**

**(Alleged by Plaintiffs against Bostik, Greenbaum, and Leonard's)**

62.    Plaintiffs incorporate by reference the foregoing and subsequent paragraphs as though fully set forth herein again.

63.    As alleged herein, defendants Bostik, Greenbaum, and Leonard's made numerous express written warranties and affirmations of fact regarding the Defective Product. Specifically, Bostik expressly warrants, *inter alia,* the following:

(a)    "Durabond D-70 Mortar is warranted as both a bonding mortar and for the prevention of damage caused by hairline cracks up to 1/8." (See Exhibit "A" attached hereto.)

(b)    "D-70    ProFlex is warranted against deterioration, chemical breakdown and the ***prevention*** of shrinkage cracks up to 1/8" from transmitting through ceramic or porcelain tile floor for ten years from the date of substantial completion." (See Exhibit "C" attached hereto.)

64.    Leonard's expressly warrants, *inter alia*, that "Leonard's Carpet Services, Inc. guarantees that ceramic tile, stone, and similar materials will not transmit substrate cracks to the tile for a period of ten (10) years after installation." (See Exhibit "D" attached hereto.)

65.     The aforementioned warranties were included within the following, *inter alia*; marketing materials, specification sheets, purchase orders, and homeowner warranty manuals, and include those representations regarding crack suppression, without limitation, as are specifically set forth herein.   As such, the express warranties became part of the basis of the bargain for Plaintiffs' homes.

66.     Bostik designed, manufactured, promoted, sold and supplied, and Leonard's installed, the Defective Product that failed to perform in accordance with the express warranties provided to Plaintiffs. Bostik, Greenbaum, and Leonard's further failed to honor the express warranties provided to Plaintiffs.  Bostik, Greenbaum and Leonard's failed to provide Plaintiffs with flooring systems which conformed to the express warranties made to Plaintiffs, and likewise failed to take subsequent steps under the express warranties to investigate, repair and/or otherwise correct the defective conditions and damages to Plaintiffs' single-family homes.

67.     Plaintiff gave Bostik, Greenbaum, and Leonard's sufficient pre-suit notice of the breaches of warranties alleged herein.

68.     As a direct and proximate result of Bostik's, Greenbaum's and Leonard's breach of their express warranties, Plaintiffs have suffered substantial damages for: overpayment for a defective product; the cost of repair and/or reconstruction and/or in lost value to their single-family homes; appropriate and reasonable investigative costs; and/or necessary relocation expense. Plaintiffs' damages will be demonstrated in a precise manner and according to proof at the time of trial.

## SECOND CAUSE OF ACTION

**Breach of Implied Warranty of Merchantability pursuant to the Common Law, and Cal. Comm. Code § 2314**

**(Alleged by Plaintiffs against Bostik, Greenbaum, and Leonard's)**

69.     Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein again.

70.    Plaintiffs allege that Bostik, Greenbaum, and Leonard's are liable for breach of the implied warranty of merchantability.

71.    Plaintiffs allege based on information and belief that flooring systems within their single-family homes have been inadequately constructed, manufactured, developed, designed, supervised and/or otherwise improved as a result of the use of the Defective Product.

72.     Plaintiffs' and Class members' flooring systems within their single-family homes in their present condition are defective, not of merchantable quality and not fit for the purpose of permitting residents to reside therein and thereon in a normal and usual fashion.

73.    Defendants, by virtue of their development, design, manufacture, market, promotion, sale, distribution, supply and/or installation of the Defective Product impliedly warranted that the Defective Product would be of merchantable quality and fit for its ordinary and intended purpose of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile.

74.    The Defective Product is substantially certain to fail within its useful life as its defective design make it unable to prevent concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile.  The Defective Product is not of merchantable quality, was not developed, designed, manufactured, marketed, promoted, sold, installed and/or supplied in a workmanlike manner, and is not fit for its intended purpose as a floor tile adhesive and crack suppression system.

75.    The Defective Product does not pass without objection in the trade as it is unable to suppress foundation cracks up to 1/8" from transferring to the tile or stone adhered to the foundation and does not satisfy industry standards.

76.    The Defective Product was not adequately contain packaged or labeled because it failed to warn of its inability to suppress cracks up to 1/8" as more fully described herein.

77. The Defective Product does not conform to the promises or affirmations regarding crack suppression as alleged herein.

78. Plaintiffs were the intended third-party beneficiaries of the contracts for sale of the Defective Product from product manufacturers to product suppliers who incorporated the Defective Product into Plaintiffs' homes.

79. Product Manufacturers and Product Suppliers knew they were not going to own the Defective Product any longer than it took to incorporate it into Plaintiffs' homes. Further, Defendants intended that any warranties, whether express or implied, that applied to the Defective Product were for the benefit of Plaintiffs.

80. As a direct and proximate result of the defects set forth herein and Defendants' breach of implied warranties, Plaintiffs have suffered damages for: overpayment for a defective product; costs of repair and/or reconstruction; and loss of value to their residences as a consequence of the Defective Product. Plaintiffs are presently unaware of the precise amount of damages, but will establish the same at trial according to proof.

81. Plaintiff gave Defendants reasonable notice of the defective conditions. Despite such notice, Defendants declined and failed to acknowledge responsibility for the same, or otherwise cause the appropriate restoration of Plaintiffs' flooring systems or to recompense Plaintiffs for the cost of repair and/or loss of value of their single-family homes.

### THIRD CAUSE OF ACTION

**Unfair Business Practices**

**Violation of Cal. Bus. & Prof. Code §§ 17200 et seq.**

**(Alleged by Plaintiffs against Bostik, Greenbaum, and Leonard's)**

82. Plaintiffs incorporate by reference the foregoing and subsequent paragraphs as though fully set forth herein again.

83. Bostik, Greenbaum, and Leonard's are "persons" as that term is defined under Cal. Bus. & Prof. Code § 17021.

84.   Defendants' conduct constitutes unfair business acts and/or practices because Defendants' practices have caused and are likely to cause substantial injury to Plaintiffs which injury is not reasonably avoidable by Plaintiffs in light of Defendants' exclusive knowledge of the Defective Product's inability to suppress cracks, and is not outweighed by the acts' and practices' benefits, if any, to Plaintiffs.  Such conduct is ongoing and continues to this date.

85.   The injury to consumers is substantial because the Defective Product was used to adhere tiles to millions of square feet of flooring space in California homes which will now have to be ripped up and replaced.  This injury amounts to tens of thousands of dollars per household and millions of dollars state-wide.

86.   The injury to Plaintiffs is not outweighed by any countervailing benefits to Plaintiffs or competition.  There is no benefit to using the Defective Product as a crack suppressant, as it is not capable of suppressing cracks.

87.   The injury to Plaintiffs is not an injury that Plaintiffs themselves could reasonably have avoided because Plaintiffs had no knowledge that the Defective Product lacked crack suppression properties and had no reason to believe that their flooring systems would not meet industry standards or contain defective components.

88.   Bostik's, Greenbaum's and Leonard's practices are unfair in that these practices violate public policy, are immoral, unethical, oppressive, unscrupulous or substantially injurious to employees, and were without valid justification or utility for which this Court should issue equitable and injunctive relief pursuant to Section 17203 of the California Business & Professions Code.

89.   It is unethical and oppressive to sell a product that fails of its essential purpose of adhering tile flooring and preventing cracks. Further, as alleged in detail above, Bostik actually knew the Defective Product was unfit for suppressing cracks when it sold it, which renders Bostik's conduct particularly immoral, unethical, oppressive and unscrupulous.  Additionally, Bostik sought ways to renege on its

warranty obligations once it realized its potential exposure to claims on the Defective Product.

90.    Defendants' conduct also offends established public policies concerning consumer protection.  The California Supreme Court has opined that "[p]rotection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society." *Vasquez v. Super. Ct.*., 4 Cal. 3d 800, 808 (1971).

91.    By the conduct alleged herein, Bostik's, Greenbaum's, and Leonard's practices were also unlawful, unfair and deceptive in that Bostik's, Greenbaum's, and Leonard's false and/or misleading statements regarding the Defective Product's performance as a "proven" crack suppression thin-set mortar capable of suppressing concrete foundation cracks up to 1/8" from damaging ceramic, porcelain and natural stone floor tile caused the Plaintiff and the other members of the Class to be damaged in the form of overpayment for a defective product; diminished property values; and/or cracked ceramic, porcelain and natural stone floor tiles with a reasonable replacement and repair cost of at least $55,000.00 per house.

92.    By and through the unlawful and unfair business practices described herein, Bostik's, Greenbaum's, and Leonard's practices were also unlawful, unfair and deceptive in that Bostik, Greenbaum, and Leonard's have obtained valuable money from Plaintiff and the other members of the Class, so as to allow Bostik, Greenbaum, and Leonard's to unfairly compete against competitors who comply with the law.

93.     Plaintiff and the other members of the Class are further entitled to, and do, seek a declaration that the described business practices are unfair, and that injunctive relief should be issued restraining Bostik, Greenbaum, and Leonard's from engaging in any unlawful and unfair business practices in the future.

94.    Plaintiff further demands on behalf of herself and each member of the Class the cost to replace the Defective Product in each of the homes with a like-kind

non-defective product capable of suppressing concrete foundation cracks up to 1/8"
from damaging ceramic, porcelain and natural stone floor tile.

95.     Plaintiff and the other members of the Class are entitled to, and do, seek
such relief as may be necessary to restore to them the money and property which
Bostik, Greenbaum, and/or Leonard's have acquired, or of which the Plaintiff and
the other members of the Class have been deprived, by means of the above
described unlawful and unfair business practices.

## FOURTH CAUSE OF ACTION
### Fraudulent Business Practices
### Violation of Cal. Bus. & Prof. Code §§ 17200 et seq.
### (Alleged by Plaintiffs against Bostik, Greenbaum, and Leonard's)

96.     Plaintiffs incorporate by reference the foregoing and subsequent
paragraphs as though fully set forth herein again.

97.     As more fully alleged herein, Defendants acts and practices are
fraudulent in that they have deceived and/or are "likely to deceive" Plaintiffs and a
significant portion of the consuming public and/or of targeted consumers.
Defendants sold Plaintiffs the Defective Product which cannot perform the functions
for it was intended.

98.     Defendants' concealed material facts from Plaintiffs and Defendants'
advertisement and sale of the Defective Product contained false and/or misleading
statements regarding the Defective Product's performance as a "proven" crack
suppression thin-set mortar capable of suppressing concrete foundation cracks up to
1/8" from damaging ceramic, porcelain and natural stone floor tile in violation of the
fraudulent prong of the Bus. & Prof. Code § 17200.

99.     Plaintiffs relied on Defendant's deceptive and fraudulent omissions or
material facts to their detriment in that they would have been aware of the material

CLASS ACTION COMPLAINT

facts and would have behaved differently by not having the Defective Product installed in their homes, not purchasing their homes, or not paying as much for their homes.

100. Defendants' deceptive and fraudulent acts and practices directly and proximately caused Plaintiffs economic injuries in that but for Defendants' concealment and misrepresentation of material facts, Plaintiffs would not have paid for the Defective Product, would not have allowed the Defective Product to be installed in their home, and/or would not have had to pay to demolish their existing tile floors and replace them with new ones.

101. Defendants were obliged to disclose the material facts because: a) Defendants had exclusive knowledge of the material facts not known to Plaintiffs and Class members, since only Defendants had access to the aggregate data from their own research and tests, and complaints from their customers through their warranty and customer service database(s); and b) Defendants actively concealed and suppressed the material facts from Plaintiffs by not warning of the lack of crack suppression properties in the Defective Product; and c) Defendants made partial representations about the Defective Product's specifications while withholding the material fact that the Defective Product was merely repackaged mortar that would not prevent cracks.

102. Plaintiffs have suffered injury in fact and lost money as a result of Defendants' deceptive and fraudulent conduct in that they overpaid for the Defective Product as well as incurred damages for costs of repair and/or reconstruction and loss of value to their residences as a consequence of the Defective Product. Plaintiffs are presently unaware of the precise amount of damages, but will establish the same at trial according to proof.

103. Plaintiffs seek an order of this Court awarding restitution, injunctive relief and all other relief allowed under Section 17200, *et seq*., plus attorneys' fees, and costs.

# FIFTH CAUSE OF ACTION

## Unlawful Business Practices

### Violation of Cal. Bus. & Prof. Code §§ 17200 et seq.

### (Alleged by Plaintiffs against Bostik, Greenbaum, and Leonard's)

104.   Plaintiffs incorporate by reference the foregoing and subsequent paragraphs as though fully set forth herein again.

105.   Defendants' acts and practices are unlawful because they violate the Consumer Legal Remedies Act, Civil Code 1750 *et seq*., Bus. & Prof. Code § 17500, the California Commercial Code, and the common law.

106.   Defendants violate Cal. Bus. & Prof. Code § 17500 as alleged throughout this Complaint and in the Sixth Cause of Action, incorporated hereto by reference.

107.   Defendants violate the CLRA, Cal. Civ. §§ 1750 *et seq.*, as alleged throughout this Complaint and the Seventh cause of action, incorporated by reference hereto.

108.   Defendant violated the California Commercial Code and common law as alleged throughout this complaint and the First and Second causes of action, incorporated by reference hereto.

109.   Plaintiffs relied on Defendants' unlawful conduct as alleged herein in that they would not have purchased the Defective Product or allowed it to be installed in their homes had they known it was merely repackaged mortar lacking any crack suppression properties.

110.   Defendant's unlawful conduct caused Plaintiffs' injuries in that: they paid more for the Defective Product that they it is worth; their tile floors will have to be replaced; and/or their homes have diminished in value.

111.   Plaintiffs seek an order of this Court awarding restitution, injunctive relief and all other relief allowed under Section 17200, *et seq.,* plus interest, attorneys' fees, and costs.

## SIXTH CAUSE OF ACTION

### False Advertising

### Violation of Cal. Bus. & Prof. Code §§ 17500 et seq.

### (Alleged by Plaintiffs against Bostik, Greenbaum, and Leonard's)

112.   Plaintiffs incorporate by reference the foregoing and subsequent paragraphs as though fully set forth herein again.

113.   Defendants are "persons" as defined by Cal. Bus. & Prof. Code § 17506.

114.   Defendants falsely advertised the Defective Product by omission of material fact as alleged herein.

115.   Plaintiffs relied on Defendants' unlawful conduct as alleged herein in that: they would not have allowed the Defective Product to be installed in their homes had they known it was merely repackaged mortar lacking any crack suppression properties; and/or would not have paid as much for their homes as they did had they known the Defective Product was used to install the tile floors in their homes.

116.   Plaintiffs have suffered injury in fact and have lost money as a result of Defendants' unlawful conduct as alleged herein in that: they would not have purchased the Defective Product; would not have allowed it to be installed in their homes had they known it was merely repackaged mortar lacking any crack suppression properties; and/or would not have paid as much for their homes as they did had they known the Defective Product was used to install the tile floors in their homes.

117.   Defendants' false advertising directly and proximately caused Plaintiffs' injuries in that: but for Defendants' affirmative misrepresentation and material omissions regarding the Defective Product's crack suppression properties as alleged herein, Plaintiffs would not have to replace their flooring at substantial cost; would not have diminished property values; and/or would not have paid as much for their homes as they did.

118.   Pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17535, Plaintiffs seek an order requiring Defendants to pay the cost of replacing Plaintiffs' floors that are adhered with the Defective Product or provide full restitution to Plaintiffs, plus interest and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### Consumers Legal Remedies Act

### Violation of Cal. Civ. Code §§ 1750 et seq.

### (Alleged by Plaintiffs against Bostik, Greenbaum, and Leonard's)

119.   Plaintiffs incorporate by reference the foregoing and subsequent paragraphs as though fully set forth herein again.

120.   At all times relevant hereto, Plaintiffs were "consumer[s]" as that term is defined in Civ. Code § 1761(d).

121.   At all times relevant hereto, the Defective Product constituted "goods" as that term is defined in Civ. Code § 1761(a).

122.   At all times relevant hereto, Defendants constituted "persons" as that term is defined in Civ. Code § 1761(c).

123.   At all times relevant hereto, the sale of the Defective Product and the sale of homes containing the Defective Product constituted "transactions" as that term is defined in Civ. Code § 1761(e).

124.   At all times relevant hereto, Defendant Leonard's provided "services" to Plaintiffs within the meaning of Civil Code § 1761(b).

125.   The CLRA provides in relevant part that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: (5) Representing that goods . . . have . . . characteristics, uses, benefits . . . which they do not have; ... (7) Representing that

goods ... are of a particular standard, quality or grade . . . if they are of another; ... and (9) Advertising goods ... with intent not to sell them as advertised."

126.  Defendant violated Civ. Code § 1770(a) subsection (5), (7), and (9) through material misrepresentations and omissions as alleged herein. The information Defendants concealed and/or did not disclose to Plaintiffs is material in that reasonable consumers would consider the fact of whether a defective adhesive is used on their tile floors to be important information when deciding whether to purchase a home.

127.  Defendant violated Civ. Code § 1770(a) subsection (5), (7), and (9) by omitting the material fact that the Defective Product was merely regular mortar that had been repackage and contained no crack-suppression properties.

128.  Plaintiffs would have behaved differently by not buying their homes, not paying as much as they did for their homes, and/or not allowing the Defective Product to be installed in their homes had they been aware that the Defective Product was defective.

129.  Defendants were obliged to disclose the material facts because: a) Defendants had exclusive knowledge of the material facts not known to Plaintiffs, since only Defendant had access to the aggregate data from their own research and tests and their own scheme to defraud consumers; and b) Defendants actively concealed and suppressed the material facts from Plaintiffs by not warning that the Defective Product lacked crack suppression characteristic, properties, and benefits; and c) Defendants made partial representations about the Defective Product's specification while withholding the material fact that the Defective Product lacked crack suppression characteristic, properties, and benefits.

130.  Plaintiffs justifiably acted or relied to their detriment upon the concealment and/or non-disclosure of material facts as alleged herein.

131.  Defendants' omissions of material facts directly and proximately caused Plaintiffs' injuries in that but for Defendants' conduct, Plaintiffs would not have

purchased their homes, not paid as much as they did for their homes, not have had to replace their floors and/or not allowed the Defective Product to be installed in their homes had they been aware that the Defective Product was defective.

132.    Plaintiff has complied with the notice requirement of Civ. Code § 1782(d).  More than 30 days have elapsed since Defendants' receipt of Plaintiffs' CLRA notice.  Defendants have not satisfied any of the elements of Civ. Code § 1782(c)(1)-(4).  As such, Plaintiffs include a claim for damages and/or restitution under the CLRA.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs pray for judgment against defendants, and each of them, as follows:

1.    An order certifying Plaintiffs' claims as a class action, appointing Annette Clark to represent the Class; and appointing Stuart M. Eppsteiner and Andrew J. Kubik as class counsel;

2.    Damages according to proof at the time of trial;

3.    Reasonable relocation expense incurred during repairs;

4.    Investigative costs according to proof at time of trial;

5.    For costs of suit incurred herein;

6.    Attorneys' Fees; and

7.    For such other and further relief as the Court may deem just and proper.

DATED:  November 25, 2015          */s/ Stuart M. Eppsteiner*

Stuart M. Eppsteiner
Andrew J. Kubik
**Eppsteiner & Fiorica Attorneys, LLP**

*Attorneys for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT